IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARITY A. TOON,

          Plaintiff,

vs.                             Case No. 11-1333-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On July 18, 2007, administrative law judge (ALJ) Edmund C. Were issued his first decision, finding that plaintiff was not disabled because she could perform other jobs that exist in significant numbers in the national economy (R. at 46-54). Plaintiff sought judicial review of the unfavorable decision,

and on March 17, 2009, the U.S. District Court for the District of Kansas reversed the decision of the Commissioner, and remanded the case for further hearing (R. at 55-73; Case No. 07-1369-MLB, Doc. 18-19, March 17, 2009).

After the case was remanded, ALJ Edmund C. Were issued a 2nd decision (R. at 32-40).  Plaintiff alleges that she has been disabled since November 1, 2005 (R. at 34).  Plaintiff is insured for disability insurance benefits through June 30, 2011 (R. at 34).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 34).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease (DDD), cervical spine; obesity; hypothyroidism; hypertension; and possibly right carpal tunnel syndrome (R. at 34).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 34). After determining plaintiff's RFC (R. at 35), the ALJ determined at step four that plaintiff is able to perform past relevant work (R. at 39).  In the alternative, at step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 39-40). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 40).

**III. Did the ALJ err by not including in his RFC findings manipulative limitation(s) consistent with the step two finding of a severe impairment of carpal tunnel syndrome?**

At step two, the ALJ included the following in his list of severe impairments: "<u>possibly</u> right carpal tunnel syndrome" (R. at 34, emphasis added). However, in making his RFC findings, the ALJ's only manipulative limitation was that she could "occasionally reach overhead" (R. at 35). The ALJ did not include in the RFC findings any limitation in plaintiff's ability to handle, finger or feel.

Contrary to plaintiff's assertion, the ALJ did not unambiguously identify carpal tunnel syndrome as a severe impairment at step two. Instead, the ALJ found at step two: "<u>possibly</u> right carpal tunnel syndrome" (R. at 34, emphasis added). This finding is consistent with Dr. Henderson's consultative examination, in which he concluded: "<u>suspect</u> carpal tunnel syndrome" (R. at 358, emphasis added). The ALJ's finding is also consistent with the testimony of Dr. Winkler. At a hearing on November 17, 2009, Dr. Winkler, a medical expert, testified as follows:

> And there was a <u>question</u> of right carpal tunnel syndrome, but <u>there's no EMT or NTV testing to confirm that diagnosis</u>.

(R. at 456, emphasis added). Dr. Winkler then testified that plaintiff's RFC would not include any limits on handling,

6

fingering or feeling (R. at 457-458).  The ALJ noted that Dr. Winkler testified that there was a question as to whether plaintiff had right carpal tunnel syndrome because there was no objective medical evidence to support this diagnosis (R. at 36). The ALJ clearly gave great weight to the opinions of Dr. Winkler because the ALJ's RFC findings are identical to the testimony of Dr. Winkler (R. at 35, 457-458).

Only Dr. Dorey diagnosed plaintiff with right carpal tunnel syndrome, on May 4, 2007 (R. at 363).  Dr. Dorey opined on August 9, 2007 that plaintiff had limitations in her ability to engage in fine and gross manipulation of her left and right hand (R. at 401).  However, Dr. Winkler testified that Dr. Dorey's opinions are not supported by objective medical findings (R. at 458); this was noted by the ALJ in his decision (R. at 36).  The ALJ gave little weight to the opinions of Dr. Dorey because of the lack of a longitudinal relationship[1] and the lack of objective medical evidence (R. at 37).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn

---

[1] The record in this case indicates that Dr. Dorey examined and/or treated plaintiff on only two occasions, April 25, 2006 (R. at 281-285), and May 4, 2007 (R. at 363).

7

v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The ALJ provided a reasonable explanation for discounting the opinions of Dr. Dorey, and for failing to include manipulative limitations (handling, fingering or feeling) due to carpal tunnel syndrome.  The ALJ could reasonably rely on the testimony of Dr. Winkler that, although there was a question of right carpal tunnel syndrome, there was no testing to confirm that diagnosis.  This finding is also consistent with the finding of Dr. Henderson, when he indicated only that he suspected carpal tunnel syndrome (R. at 358).  Therefore, on the facts of this case, the court finds no error by the ALJ in his RFC findings regarding manipulative limitations or the lack thereof.

**IV.  Did the ALJ err in his reliance on a state agency assessment authored by a single decision maker "SDM"?**

The medical opinion evidence regarding plaintiff's RFC includes a physical RFC assessment initially prepared by an SDM (single decision maker) and dated May 10, 2006 (R. at 293-300). An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources. Herrman v. Astrue, Case No. 09-1297-SAC (D. Kan. Sept. 29, 2010;

8

Doc. 19 at 9).  However, on September 5, 2006, this assessment was reviewed by Dr. Goering, who stated that, after his review of all the evidence in the file, he was affirming the assessment of May 10, 2006 as written (R. at 361).  Thus, the physical RFC assessment of May 10, 2006 reflects the opinions of Dr. Goering, and therefore could be considered by the ALJ as an opinion from an acceptable medical source.  20 C.F.R. § 404.1513(a).

The problem in this case is that the ALJ repeated an error noted by the court when this case was remanded for the first time.  In both decisions, the ALJ stated that he was in agreement with the medical opinions of the non-examining State agency medical consultant<u>s</u>, noting that although <u>they</u> did not examine the claimant, <u>they</u> provided specific reasons for <u>their</u> opinions about claimant's RFC, showing that <u>they</u> were grounded in the evidence (R. at 49 [1st decision], R. at 38 [2nd decision]).  In the first Toon decision (hereinafter referred to as "Toon I"), the court found that the ALJ erred when he erroneously indicated that an acceptable medical source had authored the physical RFC assessment, when in fact it was written by an SDM.[2]  In light of the fact that the ALJ heavily relied on the RFC opinion from the state agency medical consultant<u>s</u> in making his own RFC findings, and the fact that Dr. Dorey had provided an opinion to the Appeals Council that

---

[2] In Toon I, the court had also reversed the ALJ decision because of errors in the credibility analysis.

9

plaintiff had greater limitations, the court in Toon I could not say that the ALJ would have inevitably reached the same result if he had understood that the RFC assessment had not been written by a medical source. (R. at 70-73). In light of the court's previous ruling on this issue, the ALJ clearly erred by indicating that the assessment was written or approved by more than one medical consultant.

In contrast to the record in Toon I, when this case was remanded, the ALJ subsequently obtained testimony from Dr. Winkler. The ALJ's RFC findings are identical to those of Dr. Winkler and, with the exception of some additional environmental limitations included in the ALJ's RFC findings, are identical to those of Dr. Goering, who had affirmed the state agency RFC assessment (R. at 35, 293-300, 457-458). The ALJ also relied on the testimony of Dr. Winkler to discount the opinions of Dr. Dorey.[3] The court finds that the ALJ could reasonably rely on the opinions of two independent medical sources, Dr. Winkler and Dr. Goering, in support of his RFC findings, and to discount the opinions of Dr. Dorey, for the reasons set forth above.

The reference to the medical opinion<u>s</u> of the State agency medical consultants could be an inadvertent error, especially given that the ALJ stated at the beginning of his decision that the undersigned "has made every effort to address all issues

---

[3] In Toon I, there was no medical opinion evidence discounting or disputing the opinions of Dr. Dorey.

identified as being of concern on remand" (R. at 32).  In the alternative, even if the ALJ overlooked the fact that the author of the state agency assessment was an SDM entitled to no weight, the assessment was approved by an acceptable medical source, and an independent medical source, Dr. Winkler, testified in support of the same RFC findings which were adopted by the ALJ.  Dr. Winkler also provided valid reasons for discounting the opinions of Dr. Dorey.  On these facts, the court finds that the reference to the medical opinions of the state agency consultant<u>s</u> (referring to them in the plural instead of the singular) is, at most, harmless error.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 16th day of January, 2013, Topeka, Kansas.


<u>s/ Sam A. Crow</u>
Sam A. Crow, U.S. District Senior Judge